UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| SHAWNANN MACHADO | : | |
| | : | |
| v. | : | C.A. No. 09-045A |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of the Social Security | : | |
| Administration | : | |

**MEMORANDUM AND ORDER**

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"), 42 U.S.C. § 405(g). Plaintiff filed her Complaint on January 30, 2009 seeking to reverse the decision of the Commissioner. On August 31, 2009, Plaintiff filed a Motion to Reverse the Decision of the Commissioner. (Document No. 10). On September 30, 2009, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (Document No. 11).

With the consent of the parties, this case has been referred to me for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Based upon my review of the record and the legal memoranda filed by the parties, I find that there is substantial evidence in the record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I order that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 11) be GRANTED and Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 10) be DENIED.

## I.      PROCEDURAL HISTORY

Plaintiff filed an application for DIB on November 8, 2006 (Tr. 89-93) alleging disability as of March 1, 2003.  Her disability onset date was later amended to March 1, 2005.  (Tr. 8, 28). The application was denied initially (Tr. 50, 62-64) and on review.  (Tr. 53-61).  Plaintiff filed a request for an administrative hearing.  (Tr. 70).  On June 24, 2008, a  hearing was held before Administrative Law Judge Barry H. Best (the "ALJ") at which Plaintiff, represented by counsel and a vocational expert ("VE") appeared and testified.  (Tr. 18-49).

On August 18, 2008, the ALJ issued a decision finding that Plaintiff was not disabled.  (Tr. 6-17).  The Appeals Council denied Plaintiff's request for review on December 12, 2008.  (Tr. 1-3). A timely appeal was then filed with this Court.

## II.      THE PARTIES' POSITIONS

Plaintiff argues that the ALJ's mental RFC findings are not supported by substantial evidence because the ALJ improperly evaluated certain medical opinions and had no medical evidence supporting his own findings.

The Commissioner disputes Plaintiff's claims and asserts that the ALJ properly discounted the opinions of Dr. Denby and Dr. Parsons and that his mental RFC finding is adequately supported by the record.

## III.      THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health

and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980)

(remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence four remand may be appropriate to allow her to explain the basis for her decision.  Freeman v. Barnhart, 274 F.3d 606, 609-610 (1ˢᵗ Cir. 2001).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  Diorio v. Heckler, 721 F.2d 726, 729 (11ᵗʰ Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council).  After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction.  Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level.  See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11ᵗʰ Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant.  Jackson, 99 F.3d at 1095.  With a sentence six remand, the parties must return to the court after remand to file modified

findings of fact.  Id.  The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  Id.

## IV.    DISABILITY DETERMINATION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a

treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion.   20 C.F.R § 404.1527(d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's RFC (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner.  20 C.F.R. § 404.1527(e).  See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

### B.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.    Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987).  The obligation to fully and fairly develop the record exists

if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  Id.  However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.      Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D.      The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth,

if a claimant's impairments (considering her RFC, age, education and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(I)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

### E.    Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a

claimant.  Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids").  Seavey, 276 F.3d at 5.  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills.  Nguyen, 172 F.3d at 36.  In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert.  Heggarty, 947 F.2d at 996.  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.       Pain

"Pain can constitute a significant non-exertional impairment."  Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42

U.S.C. § 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4) Treatment, other than medication, for relief of pain;
>
> (5) Functional restrictions; and
>
> (6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986).  An individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

> **2.    Credibility**

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony requires

-10-

that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.      APPLICATION AND ANALYSIS

Plaintiff was thirty-three years old at the time of the ALJ hearing.  (Tr. 18, 89).  Plaintiff has a tenth-grade education.  (Tr. 26).  She has past relevant work as a cleaner in a donut bakery.  (Tr. 15, 110-111).  Plaintiff initially alleged disability due to nerve damage in both arms.  (Tr. 109).  She subsequently alleged depression and personality disorder.  (Tr. 24-25, 30).

On January 12, 2006, Plaintiff underwent a Rehabilitation Psychology Evaluation with Marcy Fortune, LICSW.  (Tr. 282-284).  Plaintiff appeared slightly agitated, under duress and time-conscious; her husband and four children were waiting in the car outside.  (Tr. 282).  She denied any history of psychiatric problems.  (Tr. 283).  On evaluation, Plaintiff was fully oriented and her cognitive functions appeared to be within normal limits.  Id.  She reported frustration and distress related to her physical injury.  Id.  She reported that she became tearful every other day, and has a tendency to throw objects when angry.  Id.  She exhibited rigid personal style and limited insight into her emotional reactions throughout the evaluation.  Id.  Ms. Fortune assessed Plaintiff with a "hyper-focus," firmly entrenched belief that there was something wrong with her right arm,

a very rigid personality and fixed way of thinking.  (Tr. 283-284).  Ms. Fortune noted that the extent

to which Plaintiff's personality style imposed limitations on her ability to commit to vocational

rehabilitation should be explored.  (Tr. 284).

On December 7, 2006, Plaintiff commenced care with CCAP Family Health Services.  (Tr.

366).  She reported that she felt overwhelmed, could not sleep, stayed in her room and avoided her

family.  Id.  She was given a list of counselors and psychiatrists to contact, and was given samples

and a thirty-day prescription for Lexapro.  Id.  On December 19, 2006, Plaintiff reported feeling

better with Lexapro, although she had not slept well in three nights.  (Tr. 368).  She felt stressed with

bills and had cried all day.  Id.  She was prescribed Ambien for sleep and given more samples of

Lexapro.  Id.

On April 30, 2007, Plaintiff reported that her medications were not helping.  (Tr. 378).  She

reported that she felt psychotic and "like flipping out."  Id.  She was sleeping all the time and felt

very depressed.  Id.  She was prescribed Prozac.  Id.

On January 3, 2007, Dr. Stephen Clifford, a consulting Psychologist, reviewed the records

and concluded that Plaintiff did not have any medically determinable psychiatric impairment.  (Tr.

332, 344).  On July 31, 2007, Dr. H.T. Unger, a consulting Psychiatrist, agreed with Dr. Clifford's

conclusion and opined that there was "no [medical evidence] to indicate a medically determinable

psychiatric impairment per se."  (Tr. 357).

During an October 30, 2007 Adult Psychiatric Evaluation with Dr. Charles Denby of West

Bay Psychiatric Associates (Tr. 387-390), Plaintiff reported a ten-year history of "variable clinical

depression," and stated that she was "not functioning 50% of the time."  (Tr. 387).  She reported that

she did not answer the phone and stayed in her room.  Id.  She also reported compulsive behavior,

in that her "house has to be spotless." (Tr. 389). On mental status evaluation, her attitude was cooperative, she had no abnormalities of speech, her mood was depressed and irritable, her affect was depressed and she was fully oriented to time, place and person. Id. She displayed poor concentration, with intact memory, intellectual functioning, judgment and insight. Id. Plaintiff stated that she did not trust people or allow them in her house. Id. She was diagnosed with dysthymic disorder and obsessive-compulsive disorder, and her global assessment of functioning ("GAF") was assessed at 55 or moderate symptoms, with a high of 60 over the past year. (Tr. 390).

During an appointment with Dr. Denby on November 20, 2007, Plaintiff reported that Wellbutrin made her a little calmer and seemed to be worth taking. (Tr. 391). She also indicated that she would pursue therapy. Id. On March 3, 2008, Plaintiff reported that she felt "nuts," would "flip out," scream and yell, and then lock herself in her room for behavioral control. (Tr. 392). She was losing her house due to an adjustable rate mortgage reset. Id. She believed Wellbutrin was aggravating her temper and it was discontinued, while her Prozac dosage was increased. Id. On April 7, 2008, Plaintiff reported that she was overwhelmed by "situational stressors," including home foreclosure and behavioral issues with all four of her children. (Tr. 393). She stated that she could not be with people, because she was angry and could explode at any time. Id.

During a twenty-minute appointment with Dr. Denby on April 22, 2008, Plaintiff reported that she felt calmer, although she still threw things like plates and cups and still could not sleep. (Tr. 397). A May 5, 2008 treatment note indicates "significant psycho-socio stressors" including children acting out, an uninvolved husband and a recent move. (Tr. 398). On May 20, 2008, Plaintiff stated that her life was overwhelming; she woke up with "the shakes" and slept all day long

to avoid dealing with things.  (Tr. 401).  She reported that one of her children had gotten "kicked out of school."  Id.

On May 20, 2008, Dr. Denby completed a Supplemental Questionnaire As To Residual Functional Capacity.  (Tr. 418-419).  In it, he assessed Plaintiff with moderately severe limitations in her abilities to relate to other people and respond appropriately to supervision and to coworkers, and with moderate limitations in her abilities to maintain daily activities, understand/carry out/remember instructions, respond to customary work pressures, and perform complex or varied tasks.  (Tr. 419).  Although Dr. Denby indicated that Plaintiff's limitations had lasted or could be expected to last for twelve months or longer, he did not answer the question asking for his opinion as to the earliest date when Plaintiff's limitations were present at the levels he indicated.  Id.

On June 16, 2008, Plaintiff's attorney referred her to a Psychologist, Dr. John Parsons, for a psychological evaluation to support her application for disability benefits.  (Tr. 408-417).  Plaintiff reported that she did not deal with people and did not like people.  (Tr. 409).  Dr. Parsons observed that her work tempo was slow, her attention and concentration were impaired, but she was not distracted.  Id.  Although she was irritable, she was cooperative and fair rapport was established.  Id.  Plaintiff reported that she was depressed with significant mood swings, that she was easily agitated, was sometimes physically aggressive and felt better after breaking things.  (Tr. 412).  Dr. Parsons administered several psychological tests (Tr. 409) and opined that Plaintiff was functioning within the upper limits of the borderline range of general intelligence.  (Tr. 415).  Dr. Parsons diagnosed bipolar disorder and post traumatic stress disorder, and personality/developmental disorders of borderline intellectual functioning and borderline personality disorder.  Id.  He estimated her GAF at 42 or serious symptoms, both at present and at highest over the past year.  (Tr.

416).  Dr. Parsons stated that in his medical opinion, Plaintiff was "disabled secondary to her chronic mental health issues."  Id.

Dr. Parsons completed a Supplemental Questionnaire As To Residual Functional Capacity, in which he indicated that Plaintiff was severely impaired in her ability to relate to other people, respond appropriately to supervision, respond to customary work pressures and perform complex tasks. (Tr. 402-403).  He found moderately severe limitations in Plaintiff's abilities to attend to her activities of daily living, function socially, maintain attention and concentration in a work setting, respond appropriately to coworkers and perform varied tasks.  Id.  He further found her moderately limited in her abilities to understand/carry out/remember instructions, perform simple tasks and perform repetitive tasks.  Id.  He estimated that her limitations had been present at these levels for five years.  (Tr. 402).

### A.     The ALJ's Decision

The ALJ decided this case adverse to Plaintiff at Step 5.  (Tr. 16).  The ALJ concluded that Plaintiff's status post wrist/elbow surgery, depression and personality disorder, were "severe" impairments within the meaning of 20 C.F.R. § 404.1520(c) but not of Listing-level severity.  (Tr. 8-10).  He assessed an RFC for light work reduced by moderate limitations in the ability to maintain attention and concentration, and in dealing appropriately with the public, coworkers and supervisors. (Tr. 10).  The ALJ based this RFC assessment on his evaluation of the medical evidence as well as his conclusion that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the [RFC] assessment." (Tr. 10, 14).  Based on the assessed RFC and testimony from the VE, the ALJ concluded that

Plaintiff was not disabled because, even though she could not perform her past work as a cleaner, there are a significant number of light, unskilled positions that Plaintiff could perform.  (Tr. 16).

In this appeal, Plaintiff does not challenge the ALJ's consideration of the medical evidence regarding her physical impairments or his assessment of an RFC for work at the light exertional level.  She also does not challenge the ALJ's negative assessment of her credibility.  Plaintiff's appeal focuses on the ALJ's evaluation of her mental impairments and his conclusion that they imposed only moderate limitations on her ability to maintain attention and concentration and deal appropriately with others.[1]

### B.     The ALJ's Mental RFC Findings are Supported by Substantial Evidence

First, Plaintiff contends that the ALJ committed error in his evaluation of Dr. Parsons' opinions.  Dr. Parsons is not a treating source.  He is a consulting Psychologist who evaluated Plaintiff on one occasion at the arrangement of her attorney to support her disability application. (Tr. 408-409).  Plaintiff contends that the ALJ did not articulate a valid reason for discounting Dr. Parsons' findings or opinions and that the "sole fact" that such evaluation was procured by Plaintiff's attorney is not a sufficient reason.  (Document No. 10 at pp. 10-11).

Plaintiff relies upon Gonzalez Perez v. Sec'y of Health & Human Servs, 812 F.2d 747, 749 (1st Cir. 1987), which holds that "[s]omething more substantive than just the timing and impetus of medical reports...must support an ALJ's decision to discredit them."  While Plaintiff has accurately cited the holding of Gonzalez Perez, it is inapplicable in this case because the ALJ did not rely solely on the fact that Plaintiff was referred to Dr. Parsons by her attorney.  As noted above, the ALJ also discounted the weight accorded to the opinions of Dr. Parsons because they were inconsistent

---

[1]  If these nonexertional limitations were increased to moderately severe, the ALJ likely would have found disability because the VE testified that such limitations would preclude the identified work.  (Tr. 48).

with the medical evidence as a whole.  (Tr. 15).  In particular, the ALJ accurately noted that the symptoms reported to him by Plaintiff were in excess of those reported to treating sources and contradicted by the record.  Id.  For instance, the ALJ noted that Plaintiff reported to Dr. Parsons that she had no appetite and "barely eats" but weighed 290 pounds.  (Tr. 411).  He also noted that Plaintiff indicated that she had difficulty sleeping yet reported that she napped most of the day.  Id. Further, there is no indication that Plaintiff advised Dr. Parsons that her husband worked nights and slept during the day, and she previously reported to Ms. Fortune that she slept during the day because she was "bored or tired" and stayed up nights watching television.  (Tr. 283).  She also told Dr. Denby that she slept all day so she did not have to deal with things which he described as "sleep avoidance behavior."  (Tr. 401).  The ALJ also questioned the reliability of Dr. Parsons' opinions because he imposed much more severe limitations after a single session with Plaintiff than Dr. Denby did after treating Plaintiff for several months.  Thus, the ALJ gave additional reasons beyond the fact that the evaluation was "arranged" by Plaintiff's attorney for discounting the opinions of Dr. Parsons, and "an ALJ's decision 'can still pass muster if the other reasons given to accord medical reports little weight are adequately supported.'"  Ballou v. Astrue, No. 07-386M, 2009 WL 1140127 at *5 (D.R.I. April 27, 2009) (quoting Arroyo v. Barnhart, 295 F. Supp. 2d 214, 221 (D. Mass. 2003)).  Since the ALJ's additional reasons have adequate support in the record, Plaintiff has not shown any error in the ALJ's evaluation of Dr. Parsons' opinions.

Plaintiff also contends that the ALJ gave inadequate reasons for his evaluation of Dr. Denby's opinions.  Dr. Denby is a treating Psychiatrist who initially evaluated Plaintiff on October 30, 2007 (Tr. 387-390) and saw her on approximately five other occasions, prior to the June 2008 ALJ hearing, to review her progress and medication.  (Ex. 35F).

Because a treating physician is typically able to provide a detailed longitudinal picture of a patient's impairments, an opinion from a treating source is generally entitled to considerable weight if it is well supported by clinical findings and not inconsistent with other substantial evidence of record. 20 C.F.R. § 404.1527(d); see also Castro v. Barnhart, 198 F. Supp. 2d 47, 54 (D. Mass 2002) (The ALJ "may reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in the record, even if that evidence consists of reports from non-treating doctors."). The amount of weight to which a treating source opinion is entitled depends in part on the length of the treating relationship and the frequency of the examinations. 20 C.F.R. § 404.1527(d)(1). If a treating source's opinion is not given controlling weight, the opinion must be evaluated using the enumerated factors and "good reasons" provided by the ALJ for the level of weight given. 20 C.F.R. § 404.1527(d)(2).

The ALJ discussed Dr. Denby's treatment records in detail in his decision. (Tr. 13). As previously noted, the ALJ also did not find Plaintiff to be entirely credible and concluded that "the alleged frequency, severity, and duration of [Plaintiff's] psychiatric symptoms and pain is not supported by the weight of the medical evidence to the degree alleged." (Tr. 14). Further, although Plaintiff reported a long-term history of psychiatric issues to Dr. Denby, (Tr. 387), the ALJ accurately noted that she "had no presentation until February of 2006 with sporadic treatment thereafter for primarily situational stressors" (Tr. 14-15) such as losing her home to foreclosure and issues with her children including substance abuse and a teen pregnancy. (See generally Ex. 35F).

In evaluating Dr. Denby's opinions, the ALJ was faced with the context of a Plaintiff who did not allege any mental health impairment when she applied for disability benefits (Tr. 109-110) and whom he did not find to be an entirely credible witness. See Vincent v. Astrue, No. 1:07-CV-

28, 2008 WL 596040 at **9-10 (N.D. Ind. March 3, 2008) (ALJ properly discredited treating physician's opinion based on subjective complaints where the ALJ had reason to doubt claimant's credibility.).   Further, the record does not reflect that Dr. Denby based his opinions on any psychological or psychiatric testing (see 20 C.F.R. §§ 404.1527(d)(3) and 404.1529(c)(2)) and it appears that he relied almost exclusively on Plaintiff's reported history.  As to his observations of Plaintiff, although Dr. Denby reported that Plaintiff appeared depressed, he found her to be alert, properly oriented as to time, place and person, and as having intact judgment, insight, intellectual functioning and memory.  (Tr. 389).  Finally, the ALJ concluded that evidence in the record regarding Plaintiff's range of activities and the direct observations of examining sources simply did not jibe with her asserted level of psychiatric impairment.  "It is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence."  Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).  The ALJ did so in this case, and Plaintiff has shown no violation of the treating physician rule by the ALJ in his evaluation of Dr. Denby's opinions.

Finally, Plaintiff asserts that the ALJ lacked substantial supporting evidence for his RFC findings and that it consisted of his lay assessment of the medical record.  Plaintiff is correct that an ALJ may not interpret raw medical evidence, Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).  However, it is also true that an ALJ may choose among competing medical opinions in the record, see Rivera-Torres v. Sec'y of Health & Human Servs., 837 F.2d 4, 5 (1st Cir. 1988), and may find a claimant's subjective symptomatic complaints to be only partially credible.  See S.S.R. 96-7p.  In this case, the ALJ referenced the opinions of the non-examining consulting Psychologist Dr. Clifford and Psychiatrist Dr. Unger.  (Tr. 13).  Neither Dr. Clifford nor Dr. Unger found a medically

determinable psychiatric impairment, and the ALJ found their conclusions to be "reasonable." (Tr. 14). Nonetheless, he found Plaintiff's complaints of the limitations imposed by her mental impairments to be partially credible, given her daily activities, which included caring for four children, housework, cooking and shopping. (Tr. 116-119; see also Tr. 170, 218, 389, 409). He thus arrived at an RFC in which he departed from the opinions of Dr. Clifford and Dr. Unger consistent with the partial credibility he afforded to Plaintiff's subjective complaints of difficulty with mental functioning, particularly in the area of social functioning. The First Circuit has rejected Plaintiff's argument that the ALJ's RFC assessment must strictly coincide in all respects with the opinion of some "super-evaluator, a single physician who gives the factfinder an overview of the entire case...." Evangelista, 826 F.2d at 144.

The ALJ agreed that Plaintiff's mental impairments imposed functional limitations, especially with respect to her ability to deal with other people. The ALJ's RFC assessment adequately reflects those limitations, in light of the totality of the record evidence and his unchallenged assessment of Plaintiff's credibility, in that he defined a moderate impairment for the VE as one restricting her dealings with the public, coworkers and supervisors to a minimum. (Tr. 10, n.1). Although Plaintiff disagrees with the ALJ's ultimate conclusions, she has not shown any error in the ALJ's evaluation of the medical evidence. See Rivera-Torres, 837 F.2d at 5 (the resolution of evidentiary conflicts is within the province of the ALJ); see also Castro, 198 F. Supp. 2d at 54 ("[An ALJ] may reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in the record, even if that evidence consists of reports from non-treating doctors."). Furthermore, treating source opinions based primarily on subjective complaints may be discounted by an ALJ under these circumstances. See Reeves v. Barnhart, 263 F. Supp. 2d 154, 161

(D. Mass. 2003).  Plaintiff has shown no error by the ALJ in evaluating the evidence and assessing

an RFC.

## IV.    CONCLUSION

For the reasons stated above, I order that the Commissioner's Motion for an Order Affirming

the Decision of the Commissioner (Document No. 11) be GRANTED and Plaintiff's Motion to

Reverse the Decision of the Commissioner (Document No. 10) be DENIED.  Final judgment shall

enter in favor of Defendant.


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
November 13, 2009